## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEWAINE QUICK,                          )
14120 Pear Tree Court #24               )
Silver Spring, MD 20906                 )
                                        )
LYNN DAVIS                              )
5104 11th Street NE                     )
Washington, DC 20011                    )
                                        )
               *Plaintiffs*             )    Civil Action No. 1:17-CV-1242
                                        )
        v.                              )    **CLASS ACTION**
                                        )
EDUCAP, INC.                            )
45610 Woodland Road                     )
Suite 370                               )
Sterling, VA 20166-4220                 )
                                        )
WEINSTOCK, FRIEDMAN & FRIEDMAN          )
10461 Mill Run Circle                   )
Suite 550                               )
Owings Mills, MD 21117                  )
                                        )
HSBC BANK (USA), N.A.                   )
2929 Walden Avenue                      )
Depew, NY 14043                         )
                                        )
AND                                     )
                                        )
DOES 1-100,                             )
                                        )
               *Defendants*             )

## COMPLAINT

Plaintiffs Dewaine Quick ("Quick") and Lynn Davis ("Davis") "collectively "Plaintiffs")

hereby files their complaint against EduCap, Inc. ("EduCap"), HSBC Bank USA, N.A.

("HSBC"), Weinstock, Friedman & Friedman ("Weinstock"), and DOES 1-100 (collectively

"Defendants") for violations of the Racketeering Influenced and Corrupt Organizations Act

("RICO") 18 U.S.C. § 1961-1968, *et seq*., the Fair Debt Collection Practices Act ("FDCPA") 15

1

U.S.C. § 1692, *et seq*., District of Columbia Code § 28-3814 *et seq*., and abuse of process.

## I.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337 in that Plaintiffs' RICO and FDCPA claims involve a federal question.

2.    Supplemental jurisdiction over Plaintiffs' state law claims may be exercised under 28 U.S.C. § 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b)(2) in that all of the Defendants' acts giving rise to Plaintiffs' claims occurred in this jurisdiction.

4.    Declaratory relief is available under 28 U.S.C. §§ 2201.1 and 2202.

## II.

## PARTIES

5.    Quick is a sui juris adult resident in the state of Maryland.

6.    Davis is a sui juris adult resident in the District of Columbia.

7.    Quick is a consumer as defined by 15 U.S.C. § 1692a(3) in that the defaulted private student loan at issue was incurred for personal, family or household purposes to attend St. Leo University.

8.    Davis is a consumer as defined by 15 U.S.C. § 1692a(3) in that the defaulted private student loan at issue was cosigned for personal, family or household purposes for a relative to attend Baltimore International College.

9.    EduCap is, and at times mentioned herein was, a Maryland non-profit corporation with a principal place of business at 45610 Woodland Road, Suite 370, Sterling, VA 20166-4220.

10.    EduCap is, and at all times mentioned herein was, a debt collector as defined by 15 U.S.C. § 1692a(6) in that they regularly engage, directly or indirectly, in the business of collecting defaulted private student loans under the Loan to Learn ("L2L") program, including filing the underlying debt collection lawsuits against Plaintiffs to collect the loans at issue.

11.    EduCap is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they engage, directly or indirectly, in collecting defaulted private student loans under the L2L program, including filing the underlying debt collection lawsuits against Plaintiffs to collect the loans at issue.

12.    HSBC is, and at times mentioned herein was, a chartered national bank with a principal place of business at 452 Fifth Avenue, New York, New York.

13.    HSBC is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they engaged, directly or indirectly, in collecting the loan at issue as a purported creditor, seller or lender, including filing the underlying debt collection lawsuits against Plaintiffs to collect the loans at issue.

14.    Weinstock is, and at all times mentioned herein was, a debt collector as defined by 15 U.S.C. § 1692a(6) in that they are primarily engaged in the business of collecting defaulted consumer debts alleged to be owed to another, including filing the underlying debt collection lawsuits against Plaintiffs to collect the loans at issue.

15.    Weinstock is, and at all times mentioned herein was, a debt collector as defined by D.C. Code §§ 28-3814(b)(2)-(3) in that they are directly engaged in the business of collecting defaulted debts alleged to be owed to another, including filing the underlying  debt collection lawsuit against Plaintiffs to collect the loans at issue.

3

16.    Plaintiffs are unaware of the true names and capacities of the defendants sued herein as DOES 1 through 100, and therefore, sues these defendants by such fictitious names. DOES 1 through 100 are responsible in some manner for the activities alleged herein and each were acting as an agent for the Defendants. Plaintiffs will amend their complaint to add the true names of DOES 1 through 100 once they are ascertained. Whenever reference is made to Defendants, such reference includes all Defendants and DOES 1 through 100.

17.    Defendants have acted in concert to engage in the acts and practices described throughout this Complaint and each Defendant is jointly, severally and vicariously liable for the acts and practices described herein.

### III.

### FACTUAL ALLEGATIONS

18.    On July 30, 2007, a private student loan in the amount of $16,200 was disbursed to Quick. The loan was originated and funded by HSBC.

19.    The note disclosure statement identifies the lender as HSBC Bank USA, N.A. and includes a recital that "you … promise to pay HSBC Bank USA, N.A. the loan amount with interest …."

20.    The note also states "for value received, each of the undersigned, jointly and severally, if more than one, promise to pay to *Lender* the Loan Amount …." Lender is defined in the terms and conditions as "HSBC Bank USA, National Association."

21.    Monthly payments in the amount of $173.77 were due beginning September 16, 2007. Quick ultimately defaulted on the loan by failing to remit payments required under the promissory note.

22.     In 2012, Weinstock filed a debt collection lawsuit against Quick in the District of Columbia Superior Court. Weinstock's verified complaint falsely represents "EDUCAP Inc." as the plaintiff.

23.     Weinstock demanded payment of, *inter alia*, $2,263.01—a 15% contingency-based attorney's fee based on the outstanding principal balance of $15,086.74.

24.     Weinstock collected, or is attempting to collect, its contingency-based attorney's fees under the terms of its retainer agreement with EduCap, not the terms of the promissory note signed by Quick.

25.     On July 2, 2007, a private student loan was disbursed to Davis's relative—the primary borrower. The loan was originated and funded by HSBC. Davis cosigned the promissory note.

26.     The note disclosure statement identifies the lender as HSBC Bank USA, N.A. and includes a recital that "you … promise to pay HSBC Bank USA, N.A. the loan amount with interest …."

27.     The note also states "for value received, each of the undersigned, jointly and severally, if more than one, promise to pay to *Lender* the Loan Amount …." Lender is defined in the terms and conditions as "HSBC Bank USA, National Association."

28.     Monthly payments in the amount of $54.45 were due beginning June 21, 2007. The primary borrower defaulted on the loan by failing to remit payments required under the promissory note.

29.     In 2013, Weinstock filed a debt collection lawsuit against Davis in the District of Columbia Superior Court. Weinstock's verified complaint falsely represents "EDUCAP Inc." as the plaintiff.

30.    Weinstock demanded payment of, *inter alia*, a 15% contingency-based attorney's fee based on the outstanding principal balance.

31.    Weinstock collected, or is attempting to collect, its contingency-based attorney's fees under the terms of its retainer agreement with EduCap, not the terms of the promissory note cosigned by Davis.

32.    Weinstock's contingency-based attorney' fees are unauthorized under the promissory notes because Plaintiffs only agreed to pay the actual costs of collection.

33.    EduCap has retainer agreements with a nationwide network of debt collection law firms. EduCap's network attorneys, including Weinstock, have collected, or are attempting to collect, contingency-based collection or attorney's fees under their retainer agreements with EduCap when such fees are unauthorized by the promissory notes.

34.    EduCap's network attorneys, including Weinstock, have obtained, and continue attempting to obtain, unlawful fees, costs and judgments when Defendants do not have standing or capacity to sue borrowers.

35.    Attached to Weinstock's complaints are affidavits from Marcus Maiorca ("Maiorca"), an EduCap employee, who falsely claims under oath that Plaintiffs entered into a written promissory note with *EduCap*.

36.    Plaintiffs never entered into a promissory note with EduCap.

37.    During this period, Weinstock only represented EduCap. Weinstock was not employed by HSBC, retained by HSBC, did not have an attorney/client relationship with HSBC, and was not compensated by HSBC.

38.    EduCap only appears peripherally in the loan documents as entitled to service loans by reviewing and receiving loan applications, processing forbearances, and checking

borrower credit and income.

39.    EduCap was never the originator, lender, servicer or a party to the note.

40.    EduCap was never the real party in interest, never had capacity to sue Plaintiffs, and never had authority to enforce the terms of the note.

41.    In 2015, three years after filing suit, Weinstock moved to change the caption of its complaint against Quick from "EduCap, Inc." to "EduCap, Inc. on behalf of HSBC Bank USA, N.A."—which was granted by the trial court.

42.    Two weeks later, the Defendants obtained an unlawful judgment in favor of "EduCap, Inc. on behalf of HSBC Bank USA, N.A."

43.    On May 16, 2017, two years after obtaining its unlawful judgment against Quick, Weinstock again moved to change the caption of its complaint against Quick from "EduCap, Inc. on behalf of HSBC Bank USA, N.A." to "HSBC Bank USA, N.A."—which was granted by the trial court.

44.    On July 16, 2015, Davis entered into an unlawful consent judgment with EduCap, and has been remitting payments of $5.00 per month to Weinstock.

45.    In 2017, four years after filing suit, Weinstock moved to change the caption of its complaint against Davis from "EduCap, Inc." to "HSBC Bank USA, N.A."—which was granted by the trial court.

46.    EduCap used HSBC's name to fraudulently conceal that EduCap was merely a debt collector and never had any rights to enforce the terms of the notes as a plaintiff.

47.    EduCap used HSBC's name to prevent Plaintiffs from discovering that EduCap was merely a debt collector and never had any rights to enforce the terms of the notes as a plaintiff.

48.     Unbeknownst to Plaintiffs, Defendants never had standing as the real party in interest to enforce the terms of the note by fraudulently concealing its true legal status.

49.     Unbeknownst to Plaintiffs, Defendants never had capacity to sue by concealing their true legal status.

50.     Unbeknownst to Plaintiffs, Defendants never had the right to collect contingency-based collection or attorney's fees.

51.     Unbeknownst to Plaintiffs, Defendants never had the right to obtain a judgment against the Plaintiffs.

52.     Defendants have a long, well-documented history of filing debt collection lawsuits misrepresenting their legal status to obtain unlawful judgments and contingency-based collection or attorney's fees. Defendants' conduct is designed to trick courts and consumers across the country into believing that EduCap is the actual creditor, or has authority to sue on behalf of HSBC.

53.     In *EduCap v Rogers*,[1] a private student loan was issued by HSBC on August 10, 2006 for Rogers to attend Howard University. Defendants' complaint is styled EduCap Inc. v. Rogers "for student loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Rogers "entered into a written promissory note with EduCap." Weinstock demanded contingency-based attorney's fees of $1,033.50. Defendants obtained an unlawful judgment against Rogers on September 14, 2012.

---

[1] District of Columbia Superior Court Case No. 2010 CA 006037 C

54.    In *EduCap v Smith*,[2] a private student loan was issued by HSBC on March 27, 2007 for Smith to attend the University of Maryland. Defendants' complaint is styled EduCap Inc. v. Smith "for a student loan by the Plaintiff to the Defendant." Maiorca falsely claims under oath "the said indebtedness represents merchandise sold/monies advanced/services performed by the plaintiff to or for the defendant." Weinstock demanded contingency-based attorney's fees for $960.83. Defendants obtained an unlawful judgment against Smith on January 31, 2014.

55.    In *EduCap v Brown*,[3] a private student loan was issued by HSBC on August 4, 2006 for Brown to attend Trinity College. Defendants' complaint is styled EduCap Inc. v. Brown "for Student loan (sic) by the Plaintiff to the Defendant." Maiorca falsely claims under oath that Brown "entered into a written promissory note with EduCap." Weinstock demanded contingency-based attorney's fees of $1,057.50. Defendants obtained an unlawful judgment against Brown on February 4, 2014, recently issued a writ of attachment on June 15, 2017.

**The L2L Education Loan Trust 2006-1 (the "Trust")**

56.    The Trust is an asset-backed securities transaction ("ABS") sponsored by EduCap and backed by a pool of direct-to-consumer loans originated by various private banks under EduCap's L2L program, including HSBC.

57.    The essential feature of a trust is the complete separation of the legal and equitable interests in the assets conveyed to ensure total isolation from the reach of the transferors and their creditors. Savvy investors, guided by rating agencies, are unwilling to pay top-dollar for ABS unless: (1) the transferor has relinquished all legal title by conveying the assets to a disinterested third party in a "true sale;" (2) the transferred assets are "bankruptcy

---

[2] District of Columbia Superior Court Case No. 2011 CA 006073 C

[3] District of Columbia Superior Court Case No. 2012 CA 003544 C

remote"—meaning those assets cannot be reclaimed by the transferor or its creditors in the event of the transferor's insolvency; and (3) all formalities are strictly observed to ensure the complete legal separation of the transferred assets from the transferor.

58.     The Trust was created as part of a complex financial arrangement designed by EduCap, HSBC Securities (USA), Inc., L2L Funding LLC, Bryant Park Funding LLC, and HSBC to convert future receivables on L2L loans into immediate cash while, at the same time, insulating HSBC and EduCap from potential risk.

59.     The roles, responsibilities, terms and conditions of each participant are outlined in the Loan Agreement dated December 28, 2005, Student Loan Sale and Participation Agreement dated January 27, 2006, and Letter Agreement dated August 8, 2007 ("Agreements").

60.     Although the overall structure is complex, the role of each participant is relatively simple. Student loans were originated by HSBC and sold to EduCap. EduCap, in turn, conveyed legal title to the loans to the Trust. The Trust then issued securities to the general public that were backed by the future receivables on the student loans transferred to the Trust.

61.     The loan at issue was securitized by the Defendants as part of Loan Portfolio 105.

62.     If everything had gone as planned, HSBC would have been paid by selling the loans to EduCap, EduCap would have been paid by the Trust, the Trust would have been paid by the investors who purchased the notes, and the investors would have been paid by the student borrowers.

63.     But in mid-2007, the Defendants' plan began to unravel in a failure of colossal proportions. Overzealous subprime lending resulted in the collapse of the securitization market and a severe recession. HSBC's stock prices plummeted from a record adjusted high of $99.52 per share on September 30, 2007, to a record adjusted low of $28.22 per share on March 1, 2009.

64.     Because of the market conditions, EduCap was unable to continue purchasing L2L loans as agreed. To avoid financial collapse, HSBC repurchased certain loans from EduCap, retained all other loans, and securitized all loans by pooling and selling the loans to investors thereby generating millions of dollars to improve its balance sheet and financial performance ratios.

65.     Thus, the Defendants had no legal right, title or interest in the loans.

66.     Meanwhile, EduCap hatched a plan to use the courts to obtain borrower payment proceeds for defaulted loans that should have gone to the hapless investors who purchased the securities from the Trust. Although investors were informed that they bore the risk of loss on defaulted student loans, EduCap has been attempting to recover, for themselves, borrower payment proceeds that should have gone to the investors.

67.     EduCap has been filing thousands of debt collection lawsuits across the country falsely claiming to be the real party in interest. EduCap falsely holds itself out as the plaintiff by captioning its complaints as plaintiff "EduCap, Inc." or plaintiff "EduCap, Inc. on behalf of HSBC Bank USA, N.A." when EduCap never had authority to sue borrowers.

68.     EduCap's scheme includes concealing its lack of authorization to sue from the trustees——the only entities that have the exclusive power to enforce any legal rights pertaining to the loans—because the trustees are obligated to retain all borrower payment proceeds to satisfy the Trust's note obligations.

69.     The method and manner of Defendants' deceptive debt collection practices are intentional, willful, malicious and in open defiance of state and federal consumer protection laws.

70.     Plaintiffs have been injured in the form of stress, anxiety, agitation, annoyance, emotional distress, and undue inconvenience as a result of Defendants' deceptive debt collection practices.

71.     Plaintiffs have sustained actual damages, including attorney's fees and costs resulting from the Defendants' unlawful debt collection practices.

## CLASS ALLEGATIONS

72.     Plaintiffs bring this action on behalf of one (1) class under Rule 23(b) of the District of Columbia Rules of Civil Procedure.

73.     The class consists of: (a) all natural persons; (b) sued by EduCap; (c) with affidavits claiming borrowers entered into a promissory note with EduCap; (d) seeking payment of contingency-based collection or attorney's fees; (e) for defaulted L2L loans; (f) from January 1, 2006 until the filing of this action.

74.     The class members are so numerous that joinder is impracticable for the following nonexclusive issues:

- Joinder of all class members would create extreme hardship and inconvenience as they reside all over the country;

- Individual claims by the class members are impractical because the costs to pursue individual claims far exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;

- There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

- The interests of justice will be well served by resolving the common disputes of potential class members in one forum; and

- The action is manageable as a class action.

75.     There are questions of law and fact common to the class members, which

common questions predominate over any questions that affect only individual class members. The predominate common questions are:

(a)  Whether the Defendants have a practice of misrepresenting their legal status in suing borrowers;

(b)  Whether the Defendants have a practice of filing affidavits as part of their debt collection lawsuits falsely claiming that borrowers entered into a promissory note with EduCap;

(c)  Whether the Defendants have a practice of engaging in false, deceptive and misleading debt collection practices by collecting, or attempting to collect, unlawful judgments or unauthorized contingency-based collection or attorney's fees;

(d)  Whether the Defendants have participated in a scheme to defraud or obtain money by false pretenses, representations, or promises in violation of 18 U.S.C. § 1341;

(e)  Whether the Defendants' scheme constitutes an enterprise under RICO;

(f)  Whether the Defendants have committed a pattern of racketeering activity under RICO;

(g)  Whether due to their uniform acts, Defendants were unjustly enriched or received payments and/or monies that under the principles of equity they cannot retain;

(h)  Whether such practices violate the FDCPA, District of Columbia Code § 28-314 *et seq*., or constitute abuse of process;

76.     The claims of Plaintiffs are typical of the claims of class members because of the similarity, uniformity and common purpose of Defendants' unlawful conduct. All claims are based on the same facts and the same legal theories.

77.    Plaintiffs will fairly, adequately and vigorously represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer debt collection abuse cases.

78.    A class action is superior to other alternative methods of adjudicating this dispute because individual suits are not economically feasible.

## IV.

### FIRST CLAIM FOR RELIEF

**VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT**

**ORGANIZATIONS ACT**

**18 U.S.C. § 1962 ET SEQ. AND 18 U.S.C. § 1964 ET SEQ.**

**(AS TO ALL DEFENDANTS)**

79.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-78, inclusive, above, as if fully set forth herein.

80.    In violation of 18 U.S.C. § 1962(a), Defendants have conducted, or participated directly or indirectly, in a pattern of interstate racketeering activity by receiving, investing and reinvesting income derived from payments for unlawful debts, including unlawful judgments and contingency-based collection or attorney's fees, to operate, expand, and perpetuate their operation.

81.    In violation of 18 U.S.C. § 1962(c), Defendants have conducted, or participated directly or indirectly, in a pattern of interstate racketeering activity by employing or associating with each other as part of an enterprise in collecting unlawful debts, including obtaining unlawful judgments and contingency-based collection or attorney's fees.

82.    In violation of 18 U.S.C. § 1962(d), Defendants have conspired to violate 18 U.S.C. §§ 1962(a), (c) by conducting, or participating directly or indirectly, in a pattern of

interstate racketeering activity as part of an enterprise in collecting unlawful debts, including

obtaining unlawful judgments and contingency-based collection or attorney's fees.

83.     As a direct and proximate result, Plaintiffs have been injured by both the predicate

acts of Defendants' pattern of debt collection racketeering activity in collecting unlawful debts,

including obtaining unlawful judgments, and contingency-based collection or attorney's fees.

84.     Plaintiffs seek a judgment in their favor against the Defendants for treble damages

suffered by them as a result of the Defendants' predicate acts and violations.

## SECOND CLAIM FOR RELIEF

## DECLARATORY AND INJUNCTIVE RELIEF UNDER 18 U.S.C. § 1964(A)

## (AS TO ALL DEFENDANTS)

85.     Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-84,

inclusive, above, as if fully set forth herein.

86.     This claim arises under 18 U.S.C. § 1964 *et seq*. which authorizes district courts

to enjoin violations of 18 U.S.C. § 1962 *et seq*., and 28 U.S.C. § 2201(a), which authorizes

appropriate declaratory relief.

87.     As set forth in Count I above, Defendants have violated 18 U.S.C. §§ 1962(a), (c)

and (d), and will continue to do so in the future against other consumers without injunctive relief.

88.     Enjoining the Defendants from committing these violations in the future, and/or

declaring their invalidity, is appropriate as Plaintiffs have no adequate remedy at law and, as set

forth in paragraphs 18-71 above, will suffer irreparable harm through additional unlawful suits,

judgments and payments for contingency-based collection or attorney's fees.

89.     Plaintiffs seek injunctive relief preventing the Defendants from soliciting,

engaging in, or seeking unlawful judgments or contingency-based collection or attorney's fees.

Plaintiffs further pray for an award of attorney's fees and for such other and further relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### (AS TO ALL DEFENDANTS)

90.     Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-89, inclusive, above, as if fully set forth herein.

91.     Defendants have received, and continue to receive, a benefit at the expense of the Plaintiffs, by obtaining payments from unlawful judgments and contingency-based collection or attorney's fees.

92.     Defendants have deceptively charged, attempted to collect, and collected amounts that they have unjustly obtained at the expense of the class members in that such amounts are not owed to the Defendants.

93.     The circumstances are such that it would be inequitable for the Defendants to retain any amounts obtained from Plaintiffs without returning the value thereof in that such amounts are not owed to the Defendants.

94.     Plaintiffs request compensatory damages, pre and post judgment interest, attorney's fees, costs in bringing this action, and such other and further relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15  U.S.C. § 1692 ET SEQ.**

**(AS TO EDUCAP, WEINSTOCK AND DOES 1-100)**

95.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-94, inclusive, above, as if fully set forth herein.

96.    Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is designed to annoy, harass, oppress, and abuse Plaintiffs in filing suit falsely claiming that EduCap was the real party in interest.

97.    Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is designed to annoy, harass, oppress, and abuse Plaintiffs in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

98.    Defendants violated 15 U.S.C. § 1692d(5) by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming that EduCap was the real party in interest.

99.    Defendants violated 15 U.S.C. § 1692d(5) by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

100.    Defendants violated 15 U.S.C. § 1692d(5) by using false, deceptive or misleading means to collect the debt in collecting, or attempting to collect, unauthorized contingency-based collection or attorney's fees.

101.    Defendants violated 15 U.S.C. §§ 1692e by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

102.     Defendants violated 15 U.S.C. § 1692e by using false, deceptive or misleading means to collect the debt in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

103.     Defendants violated 15 U.S.C. § 1692e by using false, deceptive or misleading means to collect the debt in collecting, or attempting to collect, unauthorized contingency-based collection or attorney's fees.

104.     Defendants violated 15 U.S.C. § 1692e(2)(A) by misrepresenting the character and amount of the debt in collecting, or attempting to collect, unauthorized contingency-based collection or attorney's fees.

105.     Defendants violated 15 U.S.C. §§ 1692e(5) by taking legal action that could not be taken in filing suit falsely claiming EduCap was the real party in interest.

106.     Defendants violated 15 U.S.C. §§ 1692e(10) by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

107.     Defendants violated 15 U.S.C. §§ 1692e(10) by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

108.     Defendants violated 15 U.S.C. §§ 1692e(10) by using false, deceptive and misleading representations and/or means to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

109.     Defendants violated 15 U.S.C. § 1692f by engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming EduCap was the real party in interest.

18

110.    Defendants violated 15 U.S.C. § 1692f by engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

111.    Defendants' unscrupulous debt collection practices are unfair to the least sophisticated consumer.

## FIFTH CLAIM FOR RELIEF

### VIOLATIONS OF DISTRICT OF COLUMBIA CODE § 28-3814 ET SEQ.

### (AS TO ALL DEFENDANTS)

112.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-111, inclusive, above, as if fully set forth herein.

113.    Defendants violated § 28-3814(c)(3) by willfully filing suit falsely accusing Plaintiffs of not paying a debt that was not owed because Defendants sold any right, title and interest in the loan through securitization.

114.    Defendants violated § 28-3814(f)(5) by willfully misrepresenting the character, extent, and amount of their claim by filing suit falsely accusing Plaintiffs of not paying a debt that was not owed because Defendants sold any right, title and interest in the loan through securitization.

115.    Defendants violated § 28-3814(f)(8) by willfully attempting to collect unlawful principal, interest, attorney's fees and costs when Plaintiffs did not owe a debt to the Defendants.

116.    Defendants violated § 28-3814(f)(9) by willfully misrepresenting its status as the real party in interest in falsely claiming that Plaintiffs entered into a written promissory note with EduCap.

117.    Defendants violated § 28-3814(g)(3) by willfully attempting to collect unlawful principal, interest, contingency-based attorney's fees when Plaintiffs did not owe a debt to the Defendants.

118.    Defendants violated D.C. Code § 28-3814(g)(4) by willfully engaging in unfair or unconscionable means to collect the debt by filing suit against Plaintiffs falsely claiming to be the real party in interest.

119.    Defendants violated D.C. Code § 28-3814(g)(4) by willfully engaging in unfair or unconscionable conduct to collect the debt in filing suit falsely claiming Plaintiffs entered into a written promissory note with EduCap.

120.    Defendants are liable to Plaintiffs for compensatory damages under D.C. Code § 28-3814(j)(1) for their willful violations of law.

121.    Defendants are liable to Plaintiffs for punitive damages under D.C. Code § 28-3814(j)(2) for their willful violations of law.

### SIXTH CLAIM FOR RELIEF

**ABUSE OF PROCESS**

**(AS TO ALL DEFENDANTS)**

122.    Plaintiffs repeat, re-allege and incorporate by reference paragraphs 1-121 inclusive, above, as if fully set forth herein.

123.    Defendants misused legal process by furthering their frivolous lawsuit to obtain a judgment and extort payment for debts they knew they were not owed.

124.    Defendants falsely claimed to be the real party in interest by submitting Maiorca's perjured affidavit to enrich themselves with ill-gotten principal, interest, attorney's fees and costs—an end not legally obtainable.

125.    The requisite element of malice or ulterior motive should be inferred from Defendants' willful abuse of process.

126.    To the extent such inference fails, malice specifically exists in that Defendants acted with a conscious disregard for the rights of Plaintiffs because their ulterior purpose in misusing legal process was: (1) harassing and coercing Plaintiffs into capitulating payment for debt they did not owe to Defendants; and (2) coercing payment of unlawful principal, interest and fees.

127.    Defendants were a substantial factor in causing Plaintiffs' damages, and the depravity of Defendants' conduct fulfills the requirements for an award of exemplary damages.

128.    Defendants have a routine business practice of filing suits falsely claiming to be the real party in interest, and obtaining payments for unlawful amounts, including unlawful judgments, further evidencing the need for an award of substantial punitive damages.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray that judgment be entered against Defendants, and each of them, for the following:

A.    Actual damages;

B.    Statutory damages;

C.    Punitive damages;

D.    Injunctive and declaratory relief;

E.    Disgorgement of ill-gotten gains;

F.    Costs of suit and reasonable attorney's fees; and

G.    For such other and further relief as the court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on any and all counts for which trial by jury is permitted by law.

DATED:  June 26, 2017                    Respectfully submitted,

                                   /s/   *Dean Gregory*
                                   Dean Gregory (Bar No. 1008846)
                                   **LAW OFFICES OF DEAN GREGORY**
                                   1717 K Street NW
                                   Suite 900
                                   Washington, D.C. 20006
                                   Telephone: (202) 905-8058
                                   Facsimile: (202) 776-0136
                                   E-mail: dean@deangregory.com

                                   *ATTORNEY FOR PLAINTIFFS*

22